## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Vickie Brown, | ) | C/A No. 0:18-2532-RMG-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Andrew Saul, Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Vickie Brown, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as the named defendant because he became the Commissioner of Social Security on June 17, 2019.



Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

_____

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).

## ADMINISTRATIVE PROCEEDINGS

In September 2014, Brown applied for SSI, alleging disability beginning March 12, 2011. Brown's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on February 16, 2017, at which Brown appeared and testified, and was represented by Sandra Chipman, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on September 5, 2017 finding that Brown was not disabled since September 15, 2014, the day the application was filed. (Tr. 16-27.)

Brown was born in 1969 and was forty-five years old on the date her application was filed. She has a tenth-grade education and has past relevant work experience as a machine operator. (Tr. 282.) Brown alleged disability due to "nerves," bipolar disorder, seizures, screws/plates in her legs, and headaches. (Tr. 281.)

In applying the five-step sequential process, the ALJ found that Brown had not engaged in substantial gainful activity since the application date of September 15, 2014. The ALJ also determined that Brown's degenerative disc disease, history of right knee injury with stable tibial plateau deformity, right foot injury with soft tissue defect and extensor tendon repair, history of seizures, bladder dysfunction, obesity, anxiety disorder, borderline intellectual functioning, bipolar disorder, and personal disorder were severe impairments. However, the ALJ found that Brown had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Brown retained the residual functional capacity to

> perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, kneel, couch, and crawl. She can frequently reach overhead. She can have no

exposure to hazards, but can have frequent exposure to extreme cold/heat and humidity. She is further limited to simple, routine tasks performed two hours at a time with no production-rate or pace work. She can have occasional interaction with the public.

(Tr. 20.) The ALJ found that Brown did not have any past relevant work, but that considering Brown's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Brown could perform. Therefore, the ALJ found that Brown was not disabled since the application date of September 15, 2014.

The Appeals Council denied Brown's request for review on July 22, 2018, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

PJG

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold

it if it is supported by substantial evidence. <u>Blalock</u>, 483 F.2d at 775.

## ISSUES

Brown raises the following issues for this judicial review:

Issue 1 Improper reliance on vocational expert testimony. The ALJ is specifically required to elicit an explanation when a potential conflict exists in the VE's testimony. Can a decision based on improper reliance of VE testimony be found to be based upon substantial evidence?

Issue 2 Where new evidence is submitted to the Appeals Council that is sufficiently material that it might have affected the Commissioner's final decision, the *Meyer* case requires that evidence be weighed. Where there is new and material evidence submitted at the Appeals Council, and where that evidence might have affected the findings of the fact-finder, must the case be remanded so that Commissioner can weigh that evidence?

(Pl. Br., ECF No. 10.)

## DISCUSSION[3]

As part of the ALJ's duty at Step Five of the sequential process, the ALJ must resolve any

apparent conflicts between a vocational expert's testimony and the <u>Dictionary of Occupational Titles</u>

("DOT"). <u>See</u> <u>Pearson v. Colvin</u>, 810 F.3d 204, 208-11 (4th Cir. 2015); SSR 00-04p, 2000 WL

1898704. Brown argues that an apparent conflict exists between the testimony provided by the

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed *on or after* March 27, 2017. <u>See</u>, <u>e.g.</u>, 20 C.F.R. §§ 416.913, 416.927. Because the instant claim was filed prior to that date, all references in the instant Report and Recommendation are to the prior versions of the regulations which were in effect at the time Brown's application for benefits was filed, unless otherwise specified.



vocational expert and the occupational information in the Dictionary of Occupational Titles ("DOT"), and that the ALJ erred in failing to resolve this conflict.

The vocational expert identified three occupations that an individual with Brown's residual functional capacity may perform: linen grader, DOT # 361.687-022; sorter, DOT # 521.687-102; and folder, DOT # 369.687-012. The Commissioner does not appear to dispute that an apparent conflict exists as to the first and third identified occupations, but disputes that an apparent conflict exists as to the second occupation. Upon review of the record, the parties' arguments, and recent caselaw, the court is constrained to agree that an apparent conflict exists between the vocational expert's testimony and the DOT with regard to the sorter occupation as well.

Brown argues that an apparent conflict exists between her limitation to "no production-rate or pace work" and the DOT's description of the sorter occupation. Specifically, Brown asserts that such a limitation conflicts with the sorter occupation's description, which includes use of a conveyor. According the DOT, DOT # 521.687-102 is entitled "picking-table worker" and the description states "[p]icks stems, stones, metal, or wood not eliminated by trash-picking machine from conveyor to prevent damage to beet knives. May trim tops from beets to prevent clogging of knives in slicers."

In response to Brown's argument, the Commissioner contends that the vocational expert specifically resolved this conflict on the record in testifying that "she provided occupations 'that were not pay per piece' or 'quota basis' occupations to comply with the ALJ's limitation to jobs that were not at a production rate or pace (Tr. 55-56). The ALJ accepted this reasonable explanation, which resolved any alleged conflict (Tr. 56)." (Def.'s Br. at 11, ECF No. 11 at 11.) However, review of the hearing transcript fails to support the Commissioner's representation of such an unequivocal answer from the vocational expert. Rather, the vocational expert as an aside in answer

a different hypothetical question stated, "And I do want to say, Your Honor, I guess I answered that back, when you said no production pace. I gave occupations that were not pay per piece type occupations, so like a quota basis. It would be manufacturing, some are. So I'm hoping that was -- fit your hypothetical." (Tr. 56.) Thus, the vocational expert's own testimony appears to question the meaning of the term "no production pace."

Accordingly, there appears to be an apparent unresolved conflict between Brown's limitations and the sorter occupation that requires use of a conveyor that would require additional explanation from a vocational expert. See Pearson, 810 F.3d at 209 (finding that the context of the word "apparent" in SSR 00-4p makes plain that the Ruling intends for the ALJ to "identify where the expert's testimony seems to, but does not necessarily, conflict with the Dictionary"); see also Morrison v. Berryhill, No. 2:18-CV-116, 2019 WL 2413314, at *8 (N.D.W. Va. May 23, 2019) (concluding that the DOT's "description of grader/sorter specifically describes looking at products on a conveyor belt and picking out non-conforming objects from conforming objects. This would appear to conflict with Plaintiff's RFC which contains no rapid pace or strict production quotas."), Report and Recommendation adopted by No. 2:18-CV-116, 2019 WL 2411434 (N.D.W. Va. June 7, 2019); Coleman v. Berryhill, No. 1:16-3465-TMC, 2018 WL 1417524, at *5 (D.S.C. Mar. 22, 2018) (noting that "the DOT definition of the 'nut sorter' job suggests that the worker would be required to remove defective product and foreign matter from a conveyer belt within a time constraint" which appears to conflict with a restriction to no production rate pace). Thus, based on the foregoing, the court is constrained to find an apparent unresolved conflict may exist and that

additional explanation from the vocational expert is necessary to resolve this conflict.[4] See, e.g., Mascio v. Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015) (holding remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (remanding where the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion") (citation omitted).

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above

August 26, 2019
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

---

[4] In light of the court's recommendation that this matter be remanded for further consideration, the court need not address Brown's remaining arguments, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Brown may present her remaining arguments concerning the alleged errors on remand.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).